UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| APRIL MCDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:10-cv-01126-LJM-DML |
| | ) | |
| PATRICK R. DONAHOE, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Motion for Summary Judgment**

April McDonald, a former employee of the United States Postal Service ("Postal Service") claims that she was discriminated against in violation of the Rehabilitation Act based upon her physical disability. The Postmaster General, who is the proper defendant in such a situation, seeks resolution of McDonald's claims through the entry of summary judgment.

### I. Discussion

#### A. Summary Judgment Standard

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). Summary judgment is warranted if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(a).

A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party." *Harney,* 526 F.3d at 1104. "Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Id.* (internal citations omitted). "It is not the duty of the court to

scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [s]he relies.@ *Id.* ΑIf the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [s]he would bear the burden of proof at trial, summary judgment must be granted to the moving party.@ *Id.* (internal quotation omitted).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e). McDonald has responded to the motion for summary judgment, but her response does not include the *Statement of Material Facts in Dispute* required by Local Rule 56-1(b). District courts have discretion to strictly enforce their local rules even against pro se litigants. *See Cady v. Sheahan,* 467 F.3d 1057, 1061 (7th Cir. 2006); *Cichon v. Exelon Generation Co.,* 401 F.3d 803, 809-10 (7th Cir. 2005). The court does so here. The consequence of failing to include the *Statement of Material Facts in Dispute* is that McDonald has conceded the defendant's version of the events. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 544 (7th Cir. 2011); *Wackett v. City of Beaver Dam,* 642 F.3d 578, 582 n.1 (7th Cir. 2011). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

### B. Undisputed Facts

Consistent with the foregoing, the following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to McDonald as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

*McDonald's Limited Duty Assignments with the Postal Service*

McDonald began her employment with the Postal Service at the South Street Processing and Distribution Center ("PD&C") in Indianapolis on February 28, 1998 as a Flat Sorter Machine Operator. McDonald suffered work-related injuries in 1998, 1999, and in 2005. As a result of her injuries, McDonald was placed on limited duty status and she continuously held, except for several months in 1998, various limited duty assignments since her first injury in 1998.

Sometime prior to December 2001, McDonald was offered and accepted a limited duty assignment in "Dual Primary," at the P&DC casing letters. She worked in this limited duty assignment until January 2004 when she was reassigned to the position of Mail Handler on Tour 3—the 3:30 p.m. to 12:00 a.m. shift. Mail Handler duties consisted of unloading and loading mail from trucks, separating mail for dispatch to other areas, dumping mail from sacks, cutting ties, facing letters, carrying mail to distributors for processing, placing processed mail into sacks, removing filled sacks and other various duties that required handling heavy containers of mail and parcels weighing up to 70 pounds. McDonald was a Mail Handler between January 2004 and September 2007. When McDonald was reassigned to the Mail Handler position in January 2004, she was assigned a limited duty position in "Patch and Seal" on Tour 3. In June 2004, McDonald was offered and accepted a limited duty assignment in "Patch and Seal" in which she would repair torn or ripped mail from a seated position by placing the damaged mail in a bag, taping the mail, placing the damaged mail in a new envelope, or sending it to the addressee if legible. This limited duty assignment also required her to lift heavy packages, but McDonald was unable to perform this duty. The assignment was on Tour 1 with the hours of 10:30 p.m. to 7:00 a.m. McDonald was assigned this limited duty assignment until January 2007.

There was not enough torn mail produced on Tour 2, the day shift, to require an employee to repair the torn mail for eight hours. Instead, the limited amount of torn mail was held over to be repaired on Tours 1 and 3. There were no limited duty employees working in "Patch and Seal" on Tour 2.

*McDonald's Medical Restrictions*

Between 2004 and 2007, McDonald's doctors issued her certain medical restrictions in connection with her "fragile left shoulder syndrome" and tendonitis in her right wrist and elbow. These included restrictions on lifting, repetitive motions, vibratory tools, overhead work, and requirements for a chair with a left armrest, working no more than five consecutive days with two consecutive days off, and no more than an eight-hour shift. Her doctors also requested that McDonald be allowed to ride back and forth to work with a co-worker.

McDonald did not have any medical restriction that required her to work Tour 2. McDonald could not perform all of the duties of any assignment in Dual Primary or in Patch and Seal. She has also never performed the full duties of a Mail Handler. In fact, McDonald is unable to perform the essential functions of a Mail Handler, Flat Sorter Machine Operator, Mail Carrier, Window Clerk, Custodian, or Mail Processing Clerk. McDonald concedes that there is "no job that I can do" and that the Postal Service would need to create a job for her.

*McDonald's Move to Martinsville*

In 2000, McDonald moved to Martinsville, Indiana, to live with Mark Hensley, her boyfriend. Hensley is an Electronic Technician in the Maintenance Craft at the

P&DC. Initially, when McDonald moved in with Hensley, they were both assigned to Tour 3. In early 2003, Hensley bid for and received a position on Tour 1 with the work hours of 10:30 p.m. to 7:00 a.m. Just over a year later, in June 2004, McDonald was assigned to Tour 1. This assignment remained available to McDonald until she was excessed to a Mail Processing Clerk position.

### *McDonald's and Hensley's Request for Transfer*

In 2006 and 2007, McDonald and Hensley made a number of requests that both be transferred to Tour 2. They made these requests even though McDonald knew that there were very few, if any, limited duty or light duty positions available on Tour 2. McDonald assumed that her requests would be forwarded to the District Reasonable Accommodation Committee ("DRAC") for consideration. She understood that the purpose of the DRAC was to review the medical restrictions of an employee and determine whether there was a position available that would accommodate the employee's restrictions. It was not until January or February 2007 that Hensley transferred to a position on Tour 2. Until then, McDonald and Hensley continued to work the same tour.

In January 2007, McDonald spoke to Sandra Crawford, Occupational Health Nurse Administrator, and the Light/Limited duty Coordinator, Elizabeth Smith, concerning her requests. On March 7, 2007, the DRAC meeting was held. At the DRAC meeting, McDonald and her attorney had the opportunity to present all the information they felt important regarding McDonald's request for a schedule change. During the meeting, McDonald requested that McDonald be placed on Tour 2. She did not suggest any alternative options as an accommodation other than changing her schedule so that she could work on Tour 2 and ride with Hensley to work. At the meeting, McDonald and her attorney were informed that there was no work available on Tour 2 within McDonald's restrictions. McDonald's current limited duty assignment on Tour 1 was still available to her to continue to work at that time. McDonald was also offered a limited duty assignment on Tour 3, but she rejected this offer. McDonald does not know of any available job for which she could perform the essential functions that was on Tour 2.

The DRAC did not make a decision at that time with regard to McDonald's request to change tours pending McDonald's provision of additional information concerning jobs that were available on Tour 2, that she thought she could do, consultation with the legal office regarding McDonald's request for accommodation based upon her preference to ride to work with Hensley, and Hensley's provision of medical information regarding any requirement for "daylight" work hours.

### *McDonald's Medical Leave of Absence*

On January 18, 2007, Dr. Kratsios placed McDonald on a medical leave of absence effective January 15, 2007. He continued this leave of absence due to her fragile left shoulder syndrome each month until June 30, 2008. During her absence, effective September 1, 2007, McDonald was reassigned back to her former clerk craft as a Mail Processing Clerk. In September 2007, McDonald was offered a limited duty

assignment in Dual Primary as a Clerk on Tour 3. However, McDonald never reported to work for this position. In fact, beginning in January 2007, McDonald never again reported for work. She was unable to work for over a year. Attendance Control Supervisor, Harry McCray, sent McDonald a letter asking her to provide evidence to the Postal Service to indicate that recovery was expected and that she would return to employment in a reasonable amount of time. However, McDonald never provided the Postal Service with any documentation indicating when she might be able to report back to work. Even if Dr. Kratsios had permitted her to return to work, McDonald did not know what her medical restrictions would be at that time.

McDonald filed for permanent disability from the Postal Service. McDonald was accepted for permanent disability in March 2009, although she was approved for disability effective to the time she was separated from her employment with the Postal Service. McDonald also applied for Social Security Disability, stating that she was unable to work as of February 1, 2007. She admits that she was unable to work after this date.

C.  Analysis

McDonald claims that the Postal Service violated the Rehabilitation Act when, in September 2006, it did not provide her with a work assignment on Tour 2 so that she could continue to ride to work with Hensley, who had requested a transfer to this shift.

Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, is the sole remedy for federal employees claiming disability discrimination. *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). The Rehabilitation Act "prohibit[s] an employer from discriminating against a qualified individual with a disability because of the disability." *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). To establish her failure to accommodate claim, McDonald must show that: (1) she was a "qualified individual with a disability"; (2) the defendant was aware of her disability; and (3) the defendant failed to reasonably accommodate her disability. *EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005). *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010). McDonald's claims fail the first and third elements of this test.

*Qualified Individual with a Disability*

First, McDonald is not a qualified person with a disability. To establish that she is a "qualified individual with a disability," McDonald must show not only that she has a disability within the meaning of the Rehabilitation Act, but also that she is qualified for the job—that she is able "to perform the essential functions of the job, with or without reasonable accommodation." *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010). To determine whether a particular duty is an essential function the court considers "the employee's job description, the employer's opinion, the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences." *Id.* (quoting *Ammons v. Aramark Uniform*

*Servs., Inc.,* 368 F.3d 809, 819 (7th Cir. 2004)). It is McDonald's burden to establish that she can perform the essential functions of her job "with or without reasonable accommodation, . . ." *Id.* at 680 (quoting *Winfrey v. City of Chicago,* 259 F.3d 610, 614 (7th Cir. 2001)). The position for which an employee must establish that she is qualified is the position she holds, not a previous position. *Id.*

McDonald was employed as a Mail Handler from January 2004 through September 2007. A Mail Handler was required to load and unload mail from trucks and lift and carry bags of mail that weighed up to 70 pounds. McDonald cannot perform the essential functions of a Mail Handler, with or without a reasonable accommodation. She also cannot perform the essential functions of a Flat Sorter Machine Operator, Mail Carrier, Window Clerk, Custodian, or Mail Processing Clerk. Because McDonald cannot show that she can perform the essential functions of a Mail Handler, with or without an accommodation, her claim fails the first element of a claim until the Rehabilitation Act.

*Reasonable Accommodation*

Next, McDonald cannot show that the Postal Service failed to reasonably accommodate her disability. A reasonable accommodation is one which permits the plaintiff to perform all the essential functions of a job. *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 485 (7th Cir. 2002). The plaintiff must show that there was a vacant position for which she was qualified. *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). In order to be "qualified," the employee must "(1) satisfy the legitimate prerequisites for that alternative position, and (2) be able to perform the essential functions of that position with or without reasonable accommodations." *Id.* (quoting *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 678 (7th Cir. 1998)). An employer is not required to reallocate essential functions "that the individual who holds the job would have to perform, with or without reasonable accommodation, in order to be considered qualified for the position." *Id.* at 841; *see also Gratzl*, at 680 (7th Cir. 2010). Further, a plaintiff is entitled only to a reasonable accommodation, not the accommodation of her choice. *Schmidt v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 342, 344-45 (7th Cir. 1996)

Here, McDonald requested a position on Tour 2 so that she could ride to and from work with Hensley. It is her burden to show that there "exists a vacant position for which she was qualified." It is undisputed that there was no available position on Tour 2 that McDonald could do with or without accommodation. The Postal Service provided her with a limited duty assignment on Tour 1 and offered her a limited duty assignment on Tour 3. Her claim therefore fails the third element of a Rehabilitation Act claim.

Because McDonald has not shown that she can satisfy the elements of a claim under the Rehabilitation Act, the defendant's motion for summary judgment must be **granted**

## II. Conclusion

The defendant's motion for summary judgment [36] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/27/2012

*[signature]*
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

**Distribution:**

**April McDonald
4315 L. Hurricane Lane
Martinsville, IN 46151**

**debra.richards@usdoj.gov**